IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

BARRON GRIFFIN,                              :

    Plaintiff,                           :

vs.                                          :    CA 15-0064-C

CAROLYN W. COLVIN,                           :
Acting Commissioner of Social Security,
                                             :
    Defendant.

MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his claims for disability insurance benefits and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 18 & 20 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of counsel at the December 22, 2015 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be affirmed.[1]

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 18 & 20 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

Plaintiff alleges disability due to gout, degenerative arthritis, peripheral neuropathy, arthritis, gouty arthritis, and polyarthralgia. The Administrative Law Judge (ALJ) made the following relevant findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.
>
> 2. The claimant has not engaged in substantial gainful activity since January 12, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairment: gout, arthritis /degenerative joint disease, obesity, and hypertension (20 CFR § 404.1520(c) and 416.920(c)).
>
> .    .    .
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> .    .    .
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he cannot climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps or stairs, kneel, crouch, and crawl. He can frequently stoop and balance. The claimant must avoid exposure to unprotected heights, dangerous machinery, and uneven terrain. He can occasionally reach overhead, and he must avoid concentrated exposure to extreme temperatures.
>
> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned has considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.
>
> .    .    .
>
> In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an

underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

At the hearing, the claimant testified that he last worked at a hotel where he was responsible [for] all maintenance. He alleged that his back pain and high blood pressure caused him to quit working. He also worked as a janitor and chicken processor. The claimant alleged that he had arthritis or gout attacks that caused his knees to go out. His knees always hurt. His ankles, feet, and back also hurt. The claimant stated that he wears a wrap on his elbow to ease his pain. He takes medications for his high blood pressure.

Upon questioning by his attorney, the claimant reported that he was using a walker. He alleged that he has used a walker or cane since January of 2012. He testified that he cannot ambulate without a walker, but admitted he uses a cane some days. He claimed his knee, ankle, and back braces were prescribed. He rated his knee, ankle, and lower back pain as a nine out of ten in severity. He stated his medication makes him drowsy. The claimant was told he needs to see a rheumatologist, but he does not have medical insurance. He cannot bend, crawl, or stoop. His friend must bather him, as he cannot stand long enough to take a shower. He has not driven since January of 2012. The claimant asserted that he has to sit up in a chair during the day and at night. He sleeps about two hours a night. The claimant stated that he cannot perform any activities of daily living, household chores, or grocery shop.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision. The medical evidence of record establishes that the claimant suffers from some joint pain caused by gout, arthritis, and/or degenerative joint disease. However, the degree of severity alleged by the claimant is not supported by the objective evidence. The claimant has reported that his bilateral leg and knee pain cause him difficulty walking and climbing. He stated he experiences pain with climbing stairs, lifting,

movement, sitting, walking, and standing. His physical examinations have revealed moderate pain with motion and tenderness in his bilateral knees. However, other physical examinations have revealed no pain, no muscle weakness, no swelling, and no redness in his joints. The remaining objective evidence also fails to support the degree of severity alleged by the claimant. An x-ray of the claimant's right knee showed only mild arthritis and good joint spaces. Views of his left knee were negative for abnormalities. Views of the claimant's right foot, taken April 2, 2012, showed worsening arthritis changes at the first metacarpophalangeal joint and dorsal region. A June 27, 2012 x-ray of the claimant's left foot was normal. The claimant was assessed with gout and prescribed medication, which he reported improved his pain. Notably, no complaints of chronic medication side effects were reported.

The claimant's most recent treatment records document the claimant's complaints of increased knee pain and reports that he fell on several occasions. He was referred to a rheumatologist who opined the claimant suffered from inflammatory degenerative arthritis. The claimant was subsequently noted to ambulate with a walker and wear braces on his knees. While the claimant's complaints of pain continued, his musculoskeletal examination revealed normal range of motion, muscle strength, and stability. He had no pain on inspection. The record documents the claimant's continued treatment on essentially a monthly basis; however, his treatment was routine and conservative in nature. Moreover, he was consistently prescribed the same medications. The claimant has had slightly elevated uric acid levels during the course of his treatment, which is consistent with gout. However, his records do not contain any evidence that his gout, arthritis, and degenerative joint disease would not, and have not, responded to medication. Additionally, the claimant's treatment records are devoid of reports that he cannot attend to his personal care needs, bathe himself, perform household chores, or drive. Rather, the claimant has simply complained of pain and requested medication refills, which strongly suggests that his medications are effective in controlling his symptoms.

The claimant sought emergency room treatment for joint pain on April 7, 2013, June 20, 2013, and August 4, 2013. The claimant was noted to ambulate with a walker in April of 2013. He was medicated and discharged in stable condition. The claimant's physical examination, performed in June of 2013, revealed a full range of motion in his knees and no significant swelling or tenderness. He was noted to have subjective discomfort in the knee. The claimant was given a shot of Tramadol at his visit in August of 2013. On each occasion, the claimant was discharged in stable condition with no restrictions or limitations.

.   .   .

As for the opinion evidence, on April 9, 2012, Dr. Robert Heilpern, a State agency medical consultant, opined that the claimant can perform a limited

4

range of light exertional activity despite his impairments. The undersigned finds this finding is generally supported by the medical evidence and the claimant's level of treatment. However, a few additional limitations have been added in light of the evidence presented at the hearing level (e.g., some increased postural and environmental limitations for safety reasons and to diminish pain exacerbation.)

Dr. Kerry Scott completed a medical source statement regarding the claimant's impairments on September 9, 2013. Dr. Scott opined that the claimant can sit two hours and stand and walk less than one hour in an eight-hour workday. Dr. Scott indicated that the claimant cannot lift any weight, and he requires the use of an assistive device to ambulate in a normal workday. Further, the claimant can never climb, balance, bend, or stoop; can rarely push, pull, operate motor vehicles, and work around hazardous machinery; and occasionally reach and perform fine and gross manipulation. Dr. Scott opined that the claimant's impairments or treatment would cause him to be absent from work more than three times a month. The assessed limitations were accredited to the claimant's diagnoses with arthritis and degeneration in his knees. Concerning the claimant's pain, Dr. Scott indicated that the claimant's pain would be distracting to the adequate performance of daily activities; increased pain would make bed rest and medication necessary; and some side effects are expected to be mildly troublesome to the claimant. Additionally, the claimant's pain prevents him from maintaining attention, concentration, or pace for periods of at least two hours.

Minimal weight is accorded to the medical source statement of the claimant's primary care physician at exhibit 11F. The medical evidence does not support a finding that the claimant's gout is chronic or severe enough to support the opinions offered by Dr. Scott. The record contains no evidence to support a finding that the claimant cannot lift any weight or sit, stand, or walk over two hours, especially in light of the claimant's testimony that he spends most of his time sitting in a chair. The claimant's gout has not caused serious damage to his joints, as evidenced by the x-rays within the record that show mostly diffuse and mild joint disease. At worst, the claimant's x-rays indicate no more than mild to moderate problems, which does not explain the claimant's allegations about needing wheelchairs, walkers, and canes. Moreover, the rheumatoid factor test was negative. The claimant has been prescribed medications including Tramadol, Lortab, Prednisone, Gabapentin, and Allopurinol, but he appears to have a positive response to such treatment. There is no evidence indicating the claimant experiences *chronic severe* medication side effects. Most significantly, Dr. Scott's treatment records do not contain examination findings that support his opinions, and his treatment records are devoid of such imposed limitations or restrictions.

The undersigned finds [] the claimant's allegations and testimony to be only partially credible. The medical evidence does not establish that the claimant's physical impairments or any other symptom of the level and

5

severity that would result in debilitating limitations. The medical evidence does not establish any medication side effects that would result in debilitating limitations. While the claimant testified that he requires a walker or cane to ambulate, the medical evidence does not indicate that the assistance devices are medically necessary on any continuing basis. Further, the claimant has not required recurrent inpatient hospitalizations, recurrent emergency room visits, surgeries, prolonged physical therapy, or chronic pain management treatment for his impairments that would be consistent with his allegations. To the contrary, the claimant's treatment has been mostly routine and conservative in nature, clearly diminishing the credibility of the level of severity the claimant alleges. He has simply been prescribed medication refills, and he reported pain was improved with medication.

. . .

The record also fails to support the claimant's testimony regarding his functioning. The claimant testified that he cannot bathe himself, perform household chores, or grocery shop, and he relies on others for everything. He also alleged that he only sleeps two hours a night. The claimant's treatment records are devoid of any mention of such limitations, which, arguably, would have been reported, at least in part, during the course of his treatment. Accordingly, the undersigned finds that the claimant's activities of daily living are self-restricted, as no treating source has advised the claimant to stay home all day, lie down during the day, or to restrict his activities of daily living in any manner. Most significantly, the claimant has not been imposed any significant restrictions or limitations or advised to refrain from performing all gainful work activity.

In sum, the above residual functional capacity assessment is supported by the medical record evidence which indicates claimant's impairments impose limitations; however, those limitations do not result in a total disability finding.

**6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**

. . .

**7.    The claimant was born on January 28, 1965 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).**

**8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).**

**9.     Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).**

**10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).**

. . .

If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.20. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as a photocopying machine operator (DOT No. 207.685-014), of which there are 110 jobs in Alabama and 12,700 jobs in the United States; ticket seller (DOT No. 211.467-030), of which there are 150 jobs in Alabama and 9,200 jobs in the United States; and marking clerk (DOT No. 209.587-034), of which there are 2,400 jobs in Alabama and 179,000 jobs in the United States. The vocational expert further testified that the aforementioned representative occupations are classified as light, unskilled work.

Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

**11.    The claimant has not been under a disability, as defined in the Social Security Act, from January 12, 2012, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

(Tr. 85, 86, 87-88, 88, 88-90, 90 & 91 (internal citations omitted; emphasis in original).) The Appeals Council affirmed the ALJ's decision (Tr. 1-4) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

### DISCUSSION

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation

> to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Social Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[2] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step, of proving that he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Although "a claimant bears the burden of demonstrating an inability to return to his past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that he cannot do her past relevant work, as here, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given

---

[2] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

8

his age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Phillips, supra*, 357 F.3d at 1237; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied*, 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that he can perform those light jobs identified by the vocational expert during the administrative hearing, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[3] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'" *Id.* (quoting *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

On appeal to this Court, Griffin asserts two reasons why the Commissioner's decision to deny him benefits is in error (*i.e.,* not supported by substantial evidence): (1)

---

[3] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

the ALJ erred in failing to properly apply the pain standard; and (2) the ALJ erred in rejecting the opinion of the treating physician, Dr. Kerry Scott.

  **A.**   **Pain Standard.** The Eleventh Circuit has consistently and often set forth the criteria for establishing disability based on testimony about pain and other symptoms. *See, e.g., Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citations omitted); *Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir. 1991).

> [T]he claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true.

*Wilson, supra,* 284 F.3d at 1225 (internal citations omitted; footnote added).

  "20 C.F.R. § 404.1529 provides that once such an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms *must* be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Foote v. Chater,* 67 F.3d 1553, 1561 (11th Cir. 1995) (emphasis supplied). In other words, once the issue becomes one of credibility and, as set forth in SSR 96-7p, in recognition of the fact that a claimant's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by objective medical evidence alone, the adjudicator (ALJ) in assessing credibility must consider in addition to the objective medical evidence the other factors/evidence set forth in 20 C.F.R. § 404.1529(c). More specifically, "[w]hen evaluating a claimant's subjective symptoms, the ALJ *must* consider the following factors: (i) the claimant's 'daily activities; (ii) the location, duration, frequency, and intensity of the [claimant's] pain or other symptoms; (iii) [p]recipitating and aggravating factors; (iv) the type,

10

dosage, effectiveness, and side effects of any medication the [claimant took] to alleviate pain or other symptoms; (v) treatment, other than medication, [the claimant] received for relief . . . of pain or other symptoms; and (vi) any measures the claimant personally used to relieve pain or other symptoms.'" *Leiter v. Commissioner of Social Security Administration*, 377 Fed.Appx. 944, 947 (11th Cir. May 6, 2010) (emphasis supplied), quoting 20 C.F.R. §§ 404.1529(c)(3); *see also* SSR 96-7p ("In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416.929(c) describe the kinds of evidence . . . that the adjudicator *must* consider in addition to the objective medical evidence when assessing the credibility of an individual's statements[.]" (emphasis supplied)).

> "Subjective pain testimony that is supported by objective medical evidence of a condition that can reasonably be expected to produce the symptoms of which the claimant complains is *itself* sufficient to sustain a finding of disability." *Hale v. Bowen,* 831 F.2d 1007, 1011 (11th Cir. 1987) (citations omitted). However, if the ALJ decides not to credit a claimant's subjective complaints as to her pain, "he must articulate specific and adequate reasons for doing so." *Holt,* 921 F.2d at 1223. "Failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true." *Id.* (citation omitted). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater,* 67 F.3d 1553, 1562 (11th Cir. 1995) (per curiam) (citation omitted).

*Leiter, supra,* 377 Fed.Appx. at 947 (footnote added).

In this case, the ALJ clearly recognized that plaintiff's underlying medically determinable impairments "could reasonably be expected to cause the alleged symptoms[.]" (Tr. 87.) It is plaintiff's position that the ALJ erred in additionally finding that "the degree of severity alleged by the claimant is not supported by the objective evidence[.]" (*Id.*)  The ALJ discussed his reasoning in this regard at no small length, as follows:

11

The medical evidence of record establishes that the claimant suffers from some joint pain caused by gout, arthritis, and/or degenerative joint disease. However, the degree of severity alleged by the claimant is not supported by the objective evidence. The claimant has reported that his bilateral leg and knee pain cause him difficulty walking and climbing. He stated he experiences pain with climbing stairs, lifting, movement, sitting, walking, and standing. His physical examinations have revealed moderate pain with motion and tenderness in his bilateral knees. However, other physical examinations have revealed no pain, no muscle weakness, no swelling, and no redness in his joints. Exhibits 1F, 2F, 3F, and 4F. The remaining objective evidence also fails to support the degree of severity alleged by the claimant. An x-ray of the claimant's right knee showed only mild arthritis and good joint spaces. Views of his left knee were negative for abnormalities. Views of the claimant's right foot, taken April 2, 2012, showed worsening arthritis changes at the first metacarpophalangeal joint and dorsal region. A June 27, 2012 x-ray of the claimant's left foot was normal. The claimant was assessed with gout and prescribed medication, which he reported improved his pain. Notably, no complaints of chronic medication side effects were reported.

The claimant's most recent treatment records document the claimant's complaints of increased knee pain and reports that he fell on several occasions. He was referred to a rheumatologist who opined the claimant suffered from inflammatory degenerative arthritis. The claimant was subsequently noted to ambulate with a walker and wear braces on his knees. While the claimant's complaints of pain continued, his musculoskeletal examination revealed normal range of motion, muscle strength, and stability. He had no pain on inspection. The record documents the claimant's continued treatment on essentially a monthly basis; however, his treatment was routine and conservative in nature. Moreover, he was consistently prescribed the same medications. The claimant has had slightly elevated uric acid levels during the course of his treatment, which is consistent with gout. However, his records do not contain any evidence that his gout, arthritis, and degenerative joint disease would not, and have not, responded to medication. Additionally, the claimant's treatment records are devoid of reports that he cannot attend to his personal care needs, bathe himself, perform household chores, or drive. Rather, the claimant has simply complained of pain and requested medication refills, which strongly suggests that his medications are effective in controlling his symptoms.

The claimant sought emergency room treatment for joint pain on April 7, 2013, June 20, 2013, and August 4, 2013. The claimant was noted to ambulate with a walker in April of 2013. He was medicated and discharged in stable condition. The claimant's physical examination, performed in June of 2013, revealed a full range of motion in his knees and no significant swelling or tenderness. He was noted to have subjective discomfort in the knee. The claimant was given a shot of Tramadol at his

>  visit in August of 2013. On each occasion, the claimant was discharged in stable condition with no restrictions or limitations.

(Tr. 87-88.) And while the plaintiff is correct in noting that the ALJ improperly cited to evidence generated prior to the disability onset date of January 12, 2012, contained in Exhibits 1F-3F, this error by the ALJ is of little significance inasmuch as a substantial portion of the other evidence of record is supportive of the ALJ's finding that the objective evidence does not support the severity of pain alleged by plaintiff. In this regard, it need be noted that plaintiff testified during his September 24, 2013 administrative hearing that the pain in his knees, ankles, and low back is constant at 9 out of 10 (with 10 requiring that he visit the emergency room). (*See id.* at 112-115.) This Court need agree with the Commissioner that the objective evidence in the record, even from emergency room records, does not support pain of the severity alleged by plaintiff, that is, severe, intractable pain. Indeed, just one month and a few days prior to the hearing, musculoskeletal examination of plaintiff revealed normal range motion, muscle strength, and stability in all extremities "***with no pain on inspection***[.]" (Tr. 429 (emphasis supplied).) Moreover, on visit to the emergency room at Choctaw General Hospital on June 20, 2013, examination of the left knee showed full range of motion, with no swelling or erytherma, and only subjective complaints of discomfort. (Tr. 414.) In addition, there is no x-ray evidence of significant impairment which could reasonably be expected to cause the pain (9 out of 10) Griffin claims he experiences; rather, all such evidence is indicative of mild arthritis/degenerative joint disease. (*See* Tr. 370, 376, 397, 398, 444 & 447.) And while it is certainly true that the record evidence references joint tenderness and swelling, particularly in the knees (*see* Tr. 340-341, 383-385, 405-410, 435, 437 & 438), and arthritis (Tr. 367-368, 371-372, 386-387 & 418-420), those same records give no indication that plaintiff was experiencing pain on the level

to which plaintiff testified, that is severe pain of 9 out of 10 (*compare* Tr. 340, 342, 367, 371, 383, 386, 436 & 438 (on examination, plaintiff was noted to be in no acute distress) *with* Tr. 428-429 (on August 20, 2013, plaintiff described his musculoskeletal pain as moderate in severity, not severe (or intractable), and it was noted on musculoskeletal examination that there was no pain on inspection)). Accordingly, this Court finds that the ALJ committed no error in finding that the objective evidence or record does not support the severity of pain alleged by Griffin.[4]

     **B.**    **Opinions of Plaintiff's Treating Physician, Dr. Kerry Scott.** Griffin contends that the ALJ erred in failing to accord substantial weight to the opinions of his treating physician, Dr. Kerry Scott. On September 9, 2013, Scott completed both a physical medical source statement (that is, a "PCE") and a clinical assessment of pain ("CAP") form. (*See* Tr. 424-425.) And while plaintiff makes only scant mention of the ALJ's evaluation of the CAP (*see* Doc. 13, at 11-14), arguing only that the ALJ erred in rejecting Scott's noted opinion that plaintiff's pain prevents him from maintaining attention, concentration or pace for periods of at least two hours (*see id.* at 12; *compare id. with* Tr. 425 (on the CAP, Scott indicated that plaintiff's pain would prevent him from maintaining attention, concentration or pace for periods of at least two hours)), he primarily contends that the ALJ erred in rejecting Scott's opinions, expressed on the PCE, that plaintiff cannot even perform sedentary work and would require a high rate

---

[4] To the extent plaintiff means to suggest that the ALJ's credibility determination is not supported by substantial evidence, this Court cannot agree. Indeed, the undersigned finds that the ALJ correctly noted that claimant's activities of daily living are self-restricted (Tr. 90) inasmuch as the medical record contains no mention of the severe restrictions and limitations about which plaintiff testified during the administrative hearing. Just as important, plaintiff's prescribed pain medication, Lortab 10, is indicated for the relief of moderate to moderately severe pain, http://www.rxlist.com/lortab-10-drug/indications-dosage.html (last visited, January 4, 2016, at 2:09 p.m.), not the severe, debilitating pain Griffin claimed at the hearing that he suffered from on a daily basis.

of absenteeism (Doc. 13, at 12). (*See* Tr. 424 (Scott indicated plaintiff can only sit for 2 hours in an 8-hour workday, stand or walk for 1 hour in an 8-hour workday, lift no weight, and would be absent from work more than three times a month, all because of arthritis and edema in the knees bilaterally which causes ambulatory difficulties).)

The law in this Circuit is clear that an ALJ "'must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error.'" *Nyberg v. Commissioner of Social Security,* 179 Fed.Appx. 589, 590-591 (11th Cir. May 2, 2006) (unpublished), quoting *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (other citations omitted). In other words, "the ALJ must give the opinion of the treating physician 'substantial or considerable weight unless "good cause" is shown to the contrary.'" *Williams v. Astrue,* 2014 WL 185258, *6 (N.D. Ala. Jan. 15, 2014), quoting *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004) (other citation omitted); *see Nyberg, supra,* 179 Fed.Appx. at 591 (citing to same language from *Crawford v. Commissioner of Social Security,* 363 F.3d 1155, 1159 (11th Cir. 2004)).

> Good cause is shown when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart,* 357 F.3d 1232, 1241 (11th Cir. 2004). Where the ALJ articulate[s] specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. *Moore* [*v. Barnhart*], 405 F.3d [1208,] 1212 [(11th Cir. 2005)].

*Gilabert v. Commissioner of Social Sec.*, 396 Fed.Appx. 652, 655 (11th Cir. Sept. 21, 2010) (per curiam). Most relevant to this case, an ALJ's articulation of reasons for rejecting a treating source's RFC assessment must be supported by substantial evidence. *See id.* ("Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. In this case, therefore, the critical question is whether

15

substantial evidence supports the ALJ's articulated reasons for rejecting Thebaud's RFC.") (citing *Moore v. Barnhart,* 405 F.3d 1208, 1212 (11th Cir. 2005)); *D'Andrea v. Commissioner of Social Sec. Admin.,* 389 Fed.Appx. 944, 947-948 (11th Cir. Jul. 28, 2010) (per curiam) (same).

In this case, the ALJ specifically determined that "minimal" weight was to be accorded Scott's opinions set forth on the PCE and the CAP because they were inconsistent with the objective evidence. (Tr. 89.)

> Minimal weight is accorded to the medical source statement of the claimant's primary care physician at exhibit 11F. The medical evidence does not support a finding that the claimant's gout is chronic or severe enough to support the opinions offered by Dr. Scott. The record contains no evidence to support a finding that the claimant cannot lift any weight or sit, stand, or walk over two hours, especially in light of the claimant's testimony that he spends most of his time sitting in a chair. The claimant's gout has not caused serious damage to his joints, as evidenced by the x-rays within the record that show mostly diffuse and mild joint disease. At worst, the claimant's x-rays indicate no more than mild to moderate problems, which does not explain the claimant's allegations about needing wheelchairs, walkers, and canes. Moreover, the rheumatoid factor test was negative. The claimant has been prescribed medications including Tramadol, Lortab, Prednisone, Gabapentin, and Allopurinol, but he appears to have a positive response to such treatment. There is no evidence indicating the claimant experiences *chronic severe* medication side effects. Most significantly, Dr. Scott's treatment records do not contain examination findings that support his opinions, and his treatment records are devoid of such imposed limitations or restrictions.

(*Id.* (emphasis in original)) The undersigned construes the ALJ's comments as an implicit (if not explicit) finding that Dr. Scott's opinions were conclusory and inconsistent with the doctor's own medical records, as well as not bolstered by the other evidence of record. (*See id.*)

A review of the transcript reflects that Dr. Scott treated plaintiff on numerous occasions from September 17, 2011 (*see* Tr. 400 (first record of visit reflects complaints of pain in left toe and right knee but no objective musculoskeletal findings)), until August

16

13, 2014 (*see* Tr. 9 (plaintiff submitted evidence to the Appeals Council, which included a visit to Dr. Scott on August 13, 2014)). There is no question but that all visits plaintiff made to Dr. Scott were to seek treatment for various aches and pains, primarily in his feet and knees. (*See* Tr. 339-343, 365-403 & 433-447.) And while Dr. Scott, on occasion in 2012 and early 2013, noted some tenderness and mild arthritis in plaintiff's bilateral knees and in his feet (*see, e.g.,* Tr. 383-385 (on January 3, 2012, plaintiff's examination was positive for tenderness in the right knee and left great toe); Tr. 342-343 (on March 1, 2012, an issue was noted with the right great toe); Tr. 340-341 (examination on March 30, 2012 revealed tenderness of the right plantar facia); Tr. 371-372 (examination on June 27, 2012 was positive for arthritis pain in knees bilaterally, left greater than right); Tr. 386-387 (examination on November 19, 2012 was positive for knee arthritis); Tr. 367-368 (examination on February 28, 2013 was positive for mild arthritis in both knees)), on each such examination Scott specifically noted that Griffin was in no distress (*see* Tr. 340, 342, 367, 371, 383 & 386). Moreover, on May 30, 2012, it was noted that Griffin declined to stay to see Scott and simply voiced a desire for pain medication. (Tr. 373.) And during this entire period, various x-rays revealed only minimal findings. (*See* Tr. 370 (negative left foot x-rays on June 27, 2012; no significant degenerative arthritis changes shown); Tr. 376 (right foot x-rays on March 30, 2012 revealed worsening arthritis of the first MTP joint of the great toe and the dorsal tarsal region; however, Bohler's angle was maintained, no acute fracture or dislocation was shown, there was no periostitis, and soft tissues were grossly intact); Tr. 397 (negative left knee x-rays on October 17, 2011); Tr. 398 (mild tri-compartmental degenerative osteoarthritis of the right knee reflected on x-rays taken on September 27, 2011).)  It was not until the summer of 2013 that Scott's examination records began revealing more significant signs (*see* Tr. 435 (examination on September 9, 2013 revealed the presence of pedal edema on

the left foot, joint swelling in both knees, and reduced lumbar forward bending); Tr. 437 (examination on August 6, 2013 revealed mild left ankle edema and edema in knees/legs, and multiple painful points in the hands, feet and legs); Tr. 438 (examination on July 3, 2013 revealed reduced knee flexion and hip flexion bilaterally and edema on the medial and dorsal surfaces of both knees)); however, Scott still continued to note, on examination, that plaintiff was in no distress (*see* Tr. 436 & 438) and additional objective testing proved grossly normal/minimal (*see* Tr. 444 (x-rays of the left ankle on August 6, 2013 revealed only soft tissue swelling, but no joint effusion, fracture, dislocation, joint space narrowing, or significant osteophytosis); Tr. 445 (negative rheumatoid factor on testing on August 9, 2013) & Tr. 447 (mild degenerative spondylosis without fracture or dislocation of the lumbar spine on July 3, 2013 x-rays)).

  Based on the foregoing, the Court finds that the ALJ was absolutely correct in giving minimal weight to Dr. Scott's September 9, 2013 physical RFC findings because these findings are inconsistent with Scott's own objective clinical findings and the outside objective testing requested by Scott. In other words, Dr. Scott's objective clinical findings of swelling/edema and arthritis in the knees are inherently inconsistent with the findings set forth on the PCE form he completed on September 9, 2013. In particular, nothing about these "maladies" support an inability to lift and/or carry 1 to 5 pounds, 5 to 10 pounds, or even 10 to 20 pounds, as indicated on the form completed by Scott. Moreover, the medical basis identified by Scott—arthritis and edema in both knees—and Scott's noted clinical findings do not support the noted restriction of an ability to only sit for two hours out of an eight-hour workday (*see* Tr. 424), particularly given Griffin's unequivocal hearing testimony that he sits up in a chair throughout the day and night (Tr. 115). Finally, the other medical evidence or record does not support the total inability to lift and carry weight, or the significant sitting and standing/walking

limitations noted by Scott on the PCE. (*See, e.g.,* Tr. 405, 407 & 410 (although plaintiff presented to the emergency room at Choctaw General Hospital on April 7, 2013 complaining of knee pain and examination revealed both knees and ankles warm and swollen with limited range of motion, Griffin called back the following day stating he was doing better); Tr. 412 & 414 (on June 20, 2013, plaintiff arrived at the emergency room of Choctaw General Hospital by wheelchair complaining of gout; however, examination of the left knee showed full range of motion, no swelling or erytherma, and only subjective complaints of discomfort); Tr. 418-420 (on emergency room visit to Jeff Anderson Regional Medical Center on August 4, 2013, examination reveled 5/5 strength in all extremities of the low body and the physician noted that plaintiff was not having an acute flair and that the pain was probably due to arthritis and a shot of toradol would be given); and Tr. 427 & 429 (on presentment to Franklin Primary Health Center on August 20, 2013, musculoskeletal examination revealed normal range of motion, muscle strength, and stability in all extremities "*with no pain on inspection*" (emphasis supplied)).) Accordingly, the Court finds the ALJ's articulated reasons for giving minimal weight to the September 9, 2013 PCE findings of Scott—namely, because those limitations and restrictions are inconsistent with Scott's own treatment records and the other medical evidence of record—supported by substantial evidence.[5]

In light of the foregoing, and because plaintiff raises no other issues, the Commissioner's fifth-step determination is due to be affirmed. *See, e.g., Owens v.*

---

[5] Given the proper rejection of the limitations noted by Scott on the PCE form, it is clear that no credence can be given to Scott's opinion that Griffin's pain would prevent him from maintaining attention, concentration or pace for periods of at least two hours (*see* Tr. 425). That this is the proper conclusion is apparent given the August 20, 2013 musculoskeletal examination at Franklin Primary Health Center, less than three weeks before Scott's completion of the PCE and CAP, which revealed normal range of motion, muscle strength, and stability in all extremities "*with no pain on inspection[.]*" (Tr. 429 (emphasis supplied).)

*Commissioner of Social Sec.*, 508 Fed.Appx. 881, 883 (11th Cir. Jan. 28, 2013) ("The final step asks whether there are significant numbers of jobs in the national economy that the claimant can perform, given h[er] RFC, age, education, and work experience. The Commissioner bears the burden at step five to show the existence of such jobs . . . [and one] avenue[] by which the ALJ may determine [that] a claimant has the ability to adjust to other work in the national economy . . . [is] by the use of a VE[.]"(internal citations omitted)); *Land v. Commissioner of Social Sec.*, 494 Fed.Appx. 47, 50 (11th Cir. Oct. 26, 2012) ("At step five . . . 'the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.' The ALJ may rely solely on the testimony of a VE to meet this burden." (internal citations omitted)).

## CONCLUSION

In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be affirmed.

**DONE** and **ORDERED** this the 5th day of January, 2016.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**